Zink. Ms. Iyer. Good morning, Your Honors. My name is Katie Iyer, and I represent the appellant Brian Prowell, and I would like to reserve three minutes for rebuttal. That request will be granted. This case is fundamentally about three very simple issues. First, does it constitute sex discrimination to target an employee for harassment on the basis of gender stereotypes? Second, is it religious discrimination to target an employee for harassment because that employee's facially nonreligious conduct does not conform to their employer's religious beliefs? And finally, are employees protected under Title VII's retaliation provision where they oppose conduct that they reasonably but mistakenly believe to fall within one or more of the categories of prohibited conduct under Title VII? Under this Court's decisions, the decisions of the United States Supreme Court, and the plain language of Title VII, the answer to each of these questions is clearly yes. Therefore, the decision of the District Court was in error and must be reversed. Before proceeding to address these three central issues, I would like to address just briefly defendants' efforts to mischaracterize what this case is about. Allow me to be clear. This case is not about whether this Court should recognize a cause of action for sexual orientation discrimination under Title VII. No party to this case has claimed at any time that such a cause of action exists or should be recognized by this Court. Plaintiff Brian Prowl asks only that this Court apply the same identical legal standards that are applicable to all other employees in bringing discrimination and retaliation claims under Title VII. With these principles in mind, I would like to turn to the three central issues that this Court must address as part of this appeal. The first question that this Court must address is a simple one. That is, whether it constitutes sex discrimination to target an employee for harassment on the basis of gender stereotypes. This question was clearly and unequivocally answered by the United States Supreme Court's decision in Pricewaterhouse v. Hopkins. In Pricewaterhouse, the Supreme Court clearly found that discrimination on the basis of gender stereotypes is a form of sex discrimination prohibited under Title VII. This Court recognized and reaffirmed Pricewaterhouse's holding in its decision in Bibby v. Philadelphia Coca-Cola Bottling Co. In Bibby, this Court further recognized that Pricewaterhouse's reasoning applies in the context of harassment claims. Thus, there can be no question under Bibby and under Pricewaterhouse that harassment on the basis of gender stereotypes is sex discrimination and is prohibited under Title VII. I think you're quite right on the law. I think that's clear. The tougher question in this case is when we apply the facts to the law. If Mr. Prowell had arrived at work, say, in 1991, and within a month on the job, he was behaving in an effeminate manner or in a manner that did not conform to gender stereotypes, and he also disclosed that he was a gay man, it seems to me the case has to go to the jury, right? Because under Pricewaterhouse, we have a classic mixed motive case. Would you agree with that? I would absolutely agree with that, Your Honor. And that is, in fact, precisely the circumstance we have at issue here. Well, that's what I want to probe you on because I've been searching the record to try to find some evidence of the discrimination and the harassment. I think it's clear. I think your adversary admitted that there was harassment here, terrible harassment of your client. But based on my study of the record, it appears that that all was visited upon him not shortly after he arrived and began acting effeminately, but rather was visited upon him after he was outed. Can you address that and point to some evidence in the record to show that he was harassed before he was outed? I would be pleased to do so, Your Honor. I would note as an initial matter that the defendant concedes that there is no evidence in the record establishing when this alleged outing incident occurred. He identifies it as occurring prior to 1997, which is the only evidence we have in the record, which means it could have occurred immediately after the inception of plaintiff's employment. Secondarily, I would note that there are a significant number of incidents of harassment as to which there simply is no chronology established in the record. Most significantly, there is no chronology established as to when the offensive gendered remarks that were targeted at plaintiff directly targeting the way he walks, the fact that he would cross his legs and swing his foot in an effeminate manner, all those sort of gender non-stereotypical behaviors that he was directly targeted for, there is no evidence in the record establishing either way when those began. So because the record is ambiguous or equivocal on that point, obviously the summary judgment standard means it has to be sent back. That's the crux of your argument. Absolutely, Your Honor. And as to even those incidents of harassment as to which defendant establishes a time frame, many of those incidents occurred long after the last date on which this alleged outing incident could have occurred. So, for example, the nickname Princess is identified as starting in 2001 or 2002, which is at its closest four years after this alleged outing incident. In the context of a retaliation claim, this court certainly would not accept a four-year time frame as evidence of causation. It should not accept the same argument when it is made in this case. Indeed, defendant has not even established that the employee who used that nickname to refer to plaintiff was employed by Wise at the time of the alleged outing incident. Thus, there simply are no inferences that can be drawn by the chronology in this case. And to the contrary, what this court must look to is the facial nature of the harassment that plaintiff was subjected to. That included numerous comments facially targeting his gender nonconformity both in appearance and in behaviors. It included also facially gendered nicknames such as Princess and Rosebud. It also included repeated offensive gendered items such as a pink feather tiara being left on plaintiff's workstation. Considered collectively, this evidence provides powerful proof that plaintiff was targeted for harassment on the basis of gender stereotypes. Now, let me go back to some of the evidence. A second of the sexual harassment. My reading of the record, particularly the affidavits, as well as a summary of what was in the depositions, is much of the evidence about the effeminate qualities all came from Prowl himself. Prowl testified about various, that the co-workers may have witnessed him fouling his nails, that he crossed his legs, that he swung his foot, that he was neat, that he was well-groomed, that he wore nice clothes, that he had a nice car, he had a high voice, that he didn't talk about women in a disparaging way, he didn't swear every other word. These all came from Prowl, correct? The testimony in the record as to... As to those, they all came from Mr. Prowl himself. That is correct. There has been no testimony from any of the harassers in this case, either presented by the defendant or by the plaintiff. They were not deposed. And I actually think, respectfully, Your Honor, that that is a critical issue in this case. The nature of the harassment that the plaintiff was subjected to was facially gendered in nature. The defendant certainly had access to the harassing employees to introduce affidavit testimony if they chose to do so, that it was in fact motivated by sexual orientation. But to get by summary judgment, and the district court here basically found that this was a sexual orientation case and not a sex discrimination case, to get by summary judgment, don't you at least have to have some evidence that you put forth in the record that this sex discrimination occurred at all? And it sounds to me that these are all issues that Mr. Prowl testified about. But at the stage of summary judgment, when the district court was looking at this, the only thing the district court saw was the outing and clearly the harassment that came as a result of sexual orientation. Well, respectfully, Your Honor, the evidence, plaintiff's testimony, is certainly adequate evidence at summary judgment to defeat a motion for summary judgment. And indeed, all of the evidence relating to the harassment in this case is… Yes, but it's not quote harassment. He's talking about his own qualities that he is saying in his testimony and in his affidavits are qualities that made him effeminate. But there's no linkage between those qualities that he alleges that anybody ever discriminated against him as a result of those qualities. Well, respectfully, Your Honor, I would disagree. There are numerous… What is there? That's what I'm asking for. What is there? Including, for example, comments directly targeting those behaviors. So, for example, comments from coworkers stating… Which comments? Things to the effect that, look at Brian there crossing his legs, swinging his foot, filing his nails, comments making fun of the way he walked in an effeminate manner, comments making fun of the way he dresses in an effeminate manner. Those are all represented in the record. In addition, there were offensive gendered nicknames which this court can easily infer arose from plaintiff's gender nonconformity such as Princess and Rosebud. Similarly, items such as the pink feathered tiara that were left on plaintiff's workstation were obviously intended to disparage his masculinity and the fact that he behaves in an effeminate manner. Therefore, there's ample evidence in the record linking plaintiff's gender nonconformity to specific harassment targeting that gender nonconformity. I would like… But isn't the basis of your claim one of gender stereotyping? It is, Your Honor. Doesn't that… Isn't there a requirement just from the mere essence of those words that somebody stereotyped him? Well, it is the essence of a gender stereotyping claim as the United States Supreme Court recognized in Pricewaterhouse v. Hopkins and this court recognized in Bibby that a plaintiff is penalized for their failure to conform to gender stereotypes. And in this case, there is abundant evidence that it was plaintiff's failure to conform to a traditional stereotypical masculine norm of how a male factory worker should behave that led to the harassment, much of the harassment in this case. I would like to address just briefly plaintiff's religious discrimination claim. The overwhelming weight of authority throughout this country has recognized religious discrimination claims in precisely the type of circumstances at issue here. Can I ask you about your theory here? There's mention in your brief about religious coercion and religious harassment. Are they the same? Are they two different things? Yes. I apologize if the terminology was inaccurate or was confusing. The issue here is whether the religious harassment that- I'm sorry, we're going to add five minutes to your time. Okay, thank you. That plaintiff was subjected to constituted religious discrimination in violation of Title VII. And I should note at the outset that there are a number of important issues in relation to this claim that have not been contested by the defendant. Thus, for example, defendant has not contested that plaintiff's coworkers and supervisors were in fact motivated by religion in targeting plaintiff for harassment. Defendant has also not contested that as a general matter targeting an employee because of their failure to conform to their employer's religious beliefs is actionable under Title VII. Thus, the sole narrow area of dispute between the parties is whether in the specific circumstances at issue here where it is the facially neutral conduct of the employee that has been targeted for religious reasons a religious discrimination claim is actionable. Again, as I stated, the overwhelming weight of authority mandates that the answer to this question is yes. Employees throughout the country have brought successful religious discrimination claims where they have engaged in conduct such as owning a bar, committing adultery, contemplating seeking an abortion, or living with a single roommate where that conduct was targeted for harassment or discrimination because it did not conform to their employer's religious beliefs. In contrast to this overwhelming weight of authority, defendant has identified only a single district court case that supports their argument that this narrow class of employees should be carved out of Title VII's otherwise broad religious discrimination protections. More importantly, defendant has failed to even articulate any textual or logical basis for carving out facially non-religious conduct targeted for religious reasons from the otherwise broad swath of Title VII's protections. Indeed, to the contrary, a cursory review of Title VII's language makes clear that there is no textual basis for such a carve-out. And furthermore, the decisions of this court make clear that the carve-out proposed by defendant rests on a proposition that has been absolutely rejected by this court, which is that there is some facial, objective standard for what constitutes religious conduct under Title VII. This court has held, on the contrary, that what determines whether conduct is religious for the purposes of Title VII is the subjective religious significance that is attributed to that conduct by a particular employer or employee. In the context of an employer-focused religious discrimination claim, which is what we have at issue here, it is the subjective religious significance attributed by the employer to the conduct that determines whether or not a religious discrimination claim is actionable. Applying these principles, it is clear that the District Court erred in awarding summary judgment on Plaintiff Prowell's religious discrimination claim. In conclusion, I would like to address briefly Plaintiff Prowell's retaliation claim. This court has repeatedly found that an employee need not prove the merits of their underlying discrimination complaint in order to prevail in raising a retaliation claim. Instead, an employee need only possess a good faith, reasonable belief that the conduct they opposed was in violation of Title VII. It has to be objectively reasonable, does it not? Absolutely, Your Honor. So doesn't it mean then that that claim is derivative of how we rule on the first claim? It seems to me if you win Claim 1, you also win Claim 3, and the converse is true. Respectfully, Your Honor, this court has recognized that if we prevail on Claims 1 or 2, then we must prevail on Claim 3. But the contrary proposition has not been recognized by this court, and, in fact, this court has held to the contrary. Thus, for example, in the case of Drinkwater v. Union Carbide Corp., this court recognized that a plaintiff who reasonably but mistakenly believed that paramour favoritism fell within the confines of Title VII sex discrimination provision could prevail in raising a retaliation claim even though her sex discrimination claim was dismissed. And this court has recognized this principle in numerous cases. It is not enough that a plaintiff simply fails to prevail on their merits claim. There is a more relaxed standard for the reasonableness of their belief. On your retaliation claim, if you go all the way through to, what's the evidence of pretext? I mean, I think we can agree that the employer has enunciated a legitimate nondiscriminatory reason for the firing. What's the evidence of pretext if we get that far? Your Honor, there is abundant evidence of pretext in this case. As an initial matter, there is abundant direct evidence establishing that the employer disapproved of plaintiff because of his repeated complaints of harassment. There was an ongoing pattern of hostility between the employer or between plaintiff's supervisors focused on plaintiff's complaints of harassment, which culminated in a meeting at which the actual decision maker in this case admonished plaintiff for having solicited coworkers to potentially testify in the event he was to bring a discrimination lawsuit. And this occurred shortly prior to plaintiff Crowell's termination and after 12 years of employment with the company. So you're saying they just had it out for him and this was the way they were going to take care of him? There is abundant more traditional evidence of pretext. I think that the evidence of retaliatory motive is strong enough alone on the basis of that meeting and other evidence establishing the hostility of the employer to his complaint. But there is also abundant more traditional evidence of pretext, including evidence demonstrating that plaintiff's work was not, in fact, left undone after he left. Contrary to their arguments that there was no need for him, they brought in other employees. They said they didn't replace him. I don't believe they replaced him with a single employee, but they did, in fact, bring in other employees to do his work. Similarly, there is evidence to suggest that their arguments as to why he was selected among the three employees was clearly pretextual. He was overwhelmingly more productive than the other two individuals, which was a key factor in the consideration. He also had expressed an interest in advancement, which they testified or the decision-makers testified was an adverse consideration against him. That's demonstrably false. So, again, as I see my time has expired, but there is abundant evidence that there was, in fact, a retaliatory motive in this case, as set forth at greater length in Plaintiff's reply brief. Thank you, Ms. Zari. We'll have you back on rebuttal. Thank you. Mr. Miller. Thank you, Judge. May it please the Court. My name is Kirk Miller. I represent the Appley Wise Business Forms, Inc. As Judge McVeary observed at page 7 of his memorandum order, despite the socially controversial subject matter, this is a statutory interpretation case. The role of a court in interpreting a federal statute such as Title VII is to give effect to congressional intent. As the Third Circuit observed in Bibby v. Coca-Cola Bottling Company, Congress did not intend to include sexual orientation as a protected class when it enacted Title VII back in 1964, and Congress has repeatedly rejected efforts to amend Title VII to include sexual orientation. Judge McVeary in this case properly concluded that the appellant, Brian Crowell, has relabeled a sexual orientation discrimination claim as a claim for discrimination based on gender nonconformity, permitting a homosexual plaintiff to proceed to trial simply by relabeling a sexual orientation discrimination claim as a claim for discrimination based on gender nonconformity would clearly evade the intent that Congress had back in 1964 when it enacted Title VII. Mr. Miller, I don't know that opposing counsel would disagree with anything you've said so far, but I don't know that it helps us decide the case. To me, the difficulty in this case is the application of the facts. How can you contend that the feather tiara and the nicknames Princess and Rosebud are not evidence of gender stereotypes? Your Honor, the facts are important in this case, and let me just quickly review what the relevant facts are. Mr. Crowell stated in his complaint in this case that he is a homosexual. During his deposition, he testified that he was outed sometime prior to November of 1997 and that after he was outed, the harassment began. Specifically, in his deposition. But that doesn't provide you with a shield, though. Him being outed doesn't provide him with a shield, right? Absolutely not, Your Honor. We've got a mixed motive here where it's more nuanced. Some of the harassment, I suppose, can be properly categorized under sexual orientation. Others could be sexual stereotyping. Your Honor, absolutely you are correct in that the outing doesn't provide wise business forms with a shield against claims for discrimination based on gender nonconformity. What Judge McVeary did in this case was exactly what the Third Circuit in its 2005 decision in Kay v. Independent Blue Cross instructed courts to do when confronted with claims of discrimination based on gender nonconformity brought by gay or lesbian plaintiffs. And that is view the allegations, view the evidence of gender nonconformity in the broader context. View them in the context of all the evidence of alleged harassment. In the Kay case, there was evidence of gender nonconformity. There was evidence that there were negative comments about the plaintiffs wearing an earring. There were comments about the plaintiffs not being a real man. What the court did in the Kay case was say, we can't just look. That case was an NPO. That was not a public opinion. That's correct, Your Honor. That's correct. What the Kay court said was look. It doesn't have much weight here in this court. I think the NPR rules prohibit it from being cited. I wouldn't waste a lot of time arguing that case. I appreciate that, Your Honor. Let me just explain the evidence in this case. Again, Mr. Prowl says he was outed back in around 1997 by the placement of a man-seeking man advertisement on his machine. He testified during his deposition, quote, I was outed. Some people found out some things and started causing problems for me there. According to Mr. Prowl, after he was outed, he was subjected to various types of harassment, including references to him by derogatory names such as fag, faggot, princess, and rosebud. He says that he overheard a conversation or overheard a comment by a fellow employee to the effect, I hate him. They should shoot all the fags. He testified about the placement of a tiara and, although the appellant didn't note this in her oral argument, a tiara and a container of lubricant jelly on his machine. He says that the harassment also consisted of graffiti in the men's room to the effect that Mr. Prowl has AIDS and was having relationships with other male employees in the plant. But, Mr. Miller, pointing to all the evidence of sexual orientation discrimination doesn't mean that there wasn't other evidence of gender stereotyping discrimination. Isn't that your problem here? We need to take all of the facts in the light most favorable to the non-moving part. And you're asking us to take, you've just rattled off several things that I think can only fairly be described as discriminatory commentary based on sexual orientation. But we're not to weigh that ample evidence against the other evidence of gender stereotyping discrimination, are we? The issue, Your Honor, is one that trial court judges face on a regular basis in employment discrimination cases. And that is, based on the evidence viewed most favorably to the non-moving party, is there any genuine issue of material fact that requires a jury trial in the case? No. And Judge McBury, in Wise's view, correctly concluded that when you view all of the evidence in context, including the timing of the alleged harassment and the nature of the alleged harassment, what Mr. Prowl has alleged and attempted to prove is really a sexual orientation discrimination claim. What more could have Mr. Prowl shown to establish the gender stereotyping that Bibby seemed to acknowledge? What are his shortcomings? What do the shortcomings here prove? Your Honor, I think that the overwhelming evidence was that it was based on sexual orientation. And his evidence of gender stereotyping is part and parcel of the alleged sexual orientation discrimination. Sounds like you just made a good argument why you're going to win at trial. You're going to stand in front of that jury and say the evidence is overwhelming. They're going to get up and say it's because of gender stereotyping. You're going to look at the jury and say, no, it's not. It's because he's a gay man. And the jury is going to have to decide which it is because if it's the former, you lose, and if it's the latter, you win. And the district court would have to instruct the jury that if it's because he's a gay man, Congress has not provided a remedy. Again, Your Honor, it's a question of whether there's any genuine issue of material fact. Wise's view is that based on the evidence viewed in its entirety, including the timing of the alleged harassment, no reasonable fact finder could conclude that the discrimination was based on gender nonconformity. Again, it's important to consider the legislative intent here. What Mr. Prowl is contending is that back in 1964, Congress clearly did not intend to prohibit discrimination against homosexual men who act like men, but Congress did back in 1964 intend to prohibit discrimination against homosexual men who act like women. Now, I think very clearly that was not the intent of Congress back in 1964 when it enacted Title VII. And if the court were to reverse the trial court's decision, what that would mean is that a homosexual plaintiff who has been subjected to discrimination based on sexual orientation would be entitled to a jury trial on any of his claims. All the plaintiff would need to do would be to show or produce evidence that he has been discriminated against based on his sexual orientation and that employees made some negative comments about the way he or she wore his hair or what he or she was wearing or the fact, as Mr. Prowl contends, that he sat down and put his one leg over the other and swung his foot. That's not really true, though, is it? What if from 91 until 97 he's acting effeminately and they do nothing to him? And then on July 1, he's outed. And on July 4, his employer comes in and says, we don't allow people who are like you and you're fired. I mean, how could that survive summary judgment? You would win that case because a reasonable fact finder could not conclude that the reason for the firing had anything to do with gender stereotyping because for six years he did not conform to gender stereotyping and they didn't fire him. But three days after they found out his sexual orientation, they fired him. So aren't you painting with too broad a brush when you say that every case is going to survive summary judgment? The factual scenarios are many. I mean, that's just one. You very well may be right, Your Honor. I'm sure that there are cases where there is indisputable evidence that the employment action was based on sexual orientation as opposed to some other characteristic. And in those cases, there would not be a genuine issue of material fact. But I think the court needs to appreciate that if it does reverse the trial court's decision, it is going to open Pandora's box because the formula, and if you read the cases, there are law review articles on how plaintiffs, homosexual plaintiffs, can get to a trial. You go into court. You've been discriminated against based on sexual orientation. You allege gender nonconformity and point to the common fact that where there is discrimination based on sexual orientation, there are comments about physical appearance. There are comments about mannerisms. Well, I suppose you could say the opposite as well. I suppose the other side could say that. You could just say, well, we found out he's gay and that's not actionable, so there's nothing to all this stuff. You argued in your appellate brief that the evidence is not severe and persuasive. Did you argue that below in the district court? I didn't see it anywhere. Your Honor, with regard to the sexual harassment issue, the way it played out in the district court was that a wise move for summary judgment based on the evidence presented that we obtained from Mr. Proud during his deposition, including all of the evidence of sexual orientation discrimination. And in response to summary judgment, Mr. Proud said essentially, uh-oh, I better come back with some more evidence of gender nonconformity. So they submitted in response to summary judgment. So by affidavit. Right, by affidavit. So our motion for summary judgment didn't deal with that issue with regard to sexual harassment. It did allege lack of evidence of severity or pervasiveness with regard to the religious discrimination. If I could just quickly jump to the religious discrimination claim. Again, it's an issue of congressional intent. Did Congress back in 1964 intend not to prohibit discrimination based on sexual orientation unless there's some kind of religious belief or religious basis for the opposition to homosexuality? According to Mr. Proud's theory, a nonbeliever, an atheist who makes a decision to discriminate against a gay man based on the atheist nonreligious view that homosexuality is morally wrong, that person would not be engaging in religious discrimination. But a Catholic or a Protestant or a member of some other faith who believes that homosexuality is morally wrong and who discriminates on the basis of the religious view that homosexuality is morally wrong, that person would be engaging in religious discrimination. A quick example, theft. Suppose that there is a supervisor, a boss, an owner who has in his office the Ten Commandments. One of the Ten Commandments is that thou shall not steal. Well, an employee steals and the boss goes up to him and tells him this is against my religious beliefs. I'm a firm believer in the Ten Commandments. You stole, therefore you're fired. Under Mr. Proud's theory, that would be religious discrimination because there was some religious basis for the decision to terminate the employee who stole. The law, however, is that it is religious discrimination only if the employer's actions require an employee to believe in. Mr. Miller, we're going to add an additional five minutes if you need it. Under the law, and this is reflected in many of the cases that the appellant has cited, it's religious discrimination if the employer's conduct requires an employee to practice or believe in a particular faith or inhibits the employee's practice of or belief in a particular faith. For example, a Christian employer, the owner is a Christian. He decides that he's going to hire only Christians and he's going to require them, all employees, to attend church services that are held on site. That is requiring employees to practice or believe in the Christian faith. That is unlawful under the case law. Another example, the employer is a Christian employer and discriminates against Jewish employees and retaliates against them for observing the Jewish holidays. That's unlawful religious discrimination because it inhibits the Jewish employee's practice of their religion. But it's not religious discrimination for an employer to make decisions based on non-religious or lifestyle or moral decisions such as marital infidelity or homosexuality. Here, Wise did not require Mr. Prowl to practice any particular religion. Wise did not require Mr. Prowl to be a Christian. Wise did not inhibit Mr. Prowl's practice of any particular faith. According to Mr. Prowl's evidence, all that Wise did was make a decision based on a non-religious characteristic, namely his homosexuality. And because Wise didn't require him to practice or believe in Christianity or inhibit Mr. Prowl's practice of his own religion, there was no religious discrimination in this case. Also, Judge Shigeru- Was the employer, your client, even on notice about some of the allegedly religious harassment? I know people left biblical pamphlets around and all. Obviously, one of the elements the plaintiff needs to prove is responding to superior liability. Is there evidence in the record that folks in management knew about this? Your Honor, the evidence is very superficial with regard to the employer's knowledge. During Mr. Prowl's deposition, I asked him about the matters about which he complained, and they all seemed to relate to the sexual orientation. He complained about the lubricant jelly on his machine. He complained about the fact that an employee said, I hate him, they should kill all the fags. There really isn't any significant evidence, to my recollection, of his complaining about any religious harassment. Any conclusion, Your Honors? This, in the final analysis, is a case of statutory interpretation. I interrupted you. Did you want to talk about retaliation? You don't have to. Yeah, I could, Your Honor. Our view is that Judge McVeary decided that issue correctly. The standard is objective reasonableness. As Judge McVeary found what Mr. Prowl complained about, was sexual orientation discrimination. As Judge McVeary stated, there shouldn't have been any doubt before the Bibby case that sexual orientation was not prohibited pursuant to Third Circuit law. But after the Bibby decision back in the early 2000s, there clearly was no reasonable belief, objectively reasonable belief, that Title VII prohibited sexual orientation discrimination. But if we send it back, though, if we disagree with you on that issue and find that there is a disputed issue of material fact regarding gender stereotyping, would you agree that the retaliation claim is derivative of that and would have to go back? Same question I asked. Not necessarily, Your Honor. How could we rule against you on Claim 1 and for you on Claim 3? The complaint, retaliation needs to focus on the nature of the complaint made by the plaintiff and whether the plaintiff had an objectively reasonable view that what he was complaining about was prohibited by Title VII. He was complaining about sexual orientation discrimination. I thought in his deposition, there were several instances where I read he said he was complaining about it, and when you asked him what the it was, it was the treatment. It was all of it. It was not only the writing on the bathroom stall, but also the tiara and the princess. And you asked him why didn't you want to be called princess. He said, that's not my name. So why wouldn't that be evidence that what he was complaining of included that in addition to the adverse comments regarding his sexual orientation? Your Honor, if you look at the transcript, what he complained about, all of those issues related to sexual orientation. He did provide some fuzzy testimony that he spoke with three other employees about testifying on his behalf in a lawsuit against the company. But if you look at the evidence as a whole, the evidence about the issues that he complained, they all related to sexual orientation discrimination. All right, Mr. Miller. Thank you, Your Honor. Thank you very much. Ms. Zier. Thank you, Your Honor. I would like to address first the final issue that was addressed by Wise Counsel, which is what plaintiff actually complained about in this case. In fact, the record is clear that plaintiff complained about all of the harassment that he was subjected to, including both certain incidents that were facially sexual orientation related, but also numerous incidents that were facially related to his gender nonconformity and also incidents that were specifically targeting him on religious grounds. And I just looked for a couple of sites. There may be others as to incidents on which he reported religious discrimination include the record at 68 and 359 both include testimony on that point. I did not have the opportunity to review the full record. I believe there are other such instances. Thus, it is clear that plaintiff's complaints were targeted at the full range of harassment that he experienced, and thus the question is whether plaintiff had a reasonable belief that any of that harassment targeted him on an unlawful basis under Title VII. In this case, it is clear that plaintiff did possess such a reasonable belief. Indeed, plaintiff's religious discrimination claim would be per se actionable in the overwhelming majority of jurisdictions that have recognized religious discrimination claims in precisely the type of circumstances here. Similarly, plaintiff's sex discrimination clearly possessed a reasonable basis in both law and in fact. And thus, at a bare minimum, this court must reverse the district court's decision with respect to plaintiff's retaliation claim. I would like to return now briefly to plaintiff's sex discrimination claim. Respondent and I, one of the few issues on which we agree is that the issue for this court is whether there is a genuine issue of fact for trial. I believe that the record amply establishes that there is such a genuine issue of fact. There is abundant evidence that is facially related to plaintiff's gender nonconformity and that makes clear that he was targeted for harassment on that basis. The alleged timeline to which respondent repeatedly referred, as I articulated in my initial argument, first of all, there is no such timeline as to many of the incidents of harassment, including many of the incidents of facially gendered harassment. And as to other incidents of harassment, they are far remote in time from this alleged outing incident. And thus, there are no inferences that can be drawn from that. Finally, I would like to address, just briefly, respondent's arguments with respect to plaintiff's religion claim. Although respondent is certainly correct that it would be unlawful under Title VII to impose upon an employee in ways that inhibit their religion or compel them to practice a religion, in fact, the case law speaks far more broadly and recognizes that employers are prohibited from imposing any form of religious orthodoxy on employees in the workplace, including targeting them because their facially nonreligious conduct does not conform to their employer's religious beliefs. For all of these reasons and for the reasons set forth at length in plaintiff's briefs, we respectfully request that this Court reverse the decision of the District Court  Thank you, Your Honor. We thank both counsel for excellent argument. And we will take this case under advice.